SHAWN G. HANSEN (SBN 197033)
shansen@nixonpeabody.com
SETH D. LEVY (SBN 217638)
slevy@nixonpeabody.com
STACI JENNIFER RIORDAN (SBN 232659)
sriordan@nixonpeabody.com
VINCENT K. YIP (SBN 170665)
vyip@nixonpeabody.com
PETER J. WIED (SBN 198475)
pwied@nixonpeabody.com
**NIXON PEABODY LLP**
300 South Grand Avenue, Suite 4100
Los Angeles, CA 90071-3151
Telephone: (213) 629-6000
Facsimile: (213) 629-6001

Attorneys for Plaintiff
**THE REGENTS OF THE UNIVERSITY OF CALIFORNIA**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,** <br><br> Plaintiff, <br><br> vs. <br><br> **GENERAL ELECTRIC COMPANY,** <br><br> Defendant. | Case No. <br><br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Plaintiff The Regents of the University of California ("The Regents") alleges as follows for its Complaint against Defendant General Electric Company ("Defendant"):

## INTRODUCTION

1. This is an action for patent infringement arising under 35 U.S.C. § 1 *et seq.* This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2. This case is about protecting the reinvention of the light bulb by a Nobel laureate-led team at the University of California, Santa Barbara ("UC Santa Barbara"), the theft of that technology by unlicensed foreign manufacturers, and the Defendant's trafficking in infringing imports without proper compensation to The Regents.

3. Specifically, at issue is the Defendant's infringement of The Regents' United States Patents 7,781,789 ("'789 patent"), 9,240,529 ("'529 patent"), 9,859,464 ("'464 patent"), and 10,217,916 ("'916 patent") (collectively, the "Asserted Patents"), which are fundamental to a new generation of light bulbs commonly referred to as "filament" LED light bulbs (illustrated below).



**Filament LED Light Bulb**         **Filament LED**

- 1 -

**COMPLAINT**

4. The Regents brings this Complaint as part of its campaign to spearhead a broader, national response to the existential threat to university technology transfer that is posed by the widespread disregard for university patent rights that is prevalent today.

5. Universities and research institutions across the country have established technology transfer offices to identify, protect, and license the intellectual property developed by their faculty, students, and other researchers. These offices sit at the interface between academia and the private sector. They leverage an interdisciplinary collection of skills to transform the fruits of a university's research into commercial products and services by establishing and nurturing relationships between the university, where the research is conducted, and entities in the private sector, which manufacture and sell products embodying the university's research. While as much an art as it is a science, the success of any technology transfer program is predicated on the private sector respecting the university's intellectual property rights.

6. However, Defendant and others routinely take unfair advantage of academic openness. They exploit university intellectual property with impunity and then profit from selling infringing goods. By flooding the market with unauthorized products, they cripple the ability of university technology transfer programs to effectively license universities' intellectual property. This undermines universities' rightful opportunity to share in the revenue generated through commercialization of their intellectual property – revenue that would support further research, education, and development of cutting-edge technologies and new scientific insights that benefit the public.

7. This case is a classic example of that very scenario. The Regents has expended and continues to expend significant resources to engineer, research, develop, and license the inventions that are the subject of this case, only to see those inventions stolen by unlicensed foreign manufacturers, imported into the

**COMPLAINT**

U.S., and sold to an unwitting consuming public by Defendant.

8. Filament LED light bulbs may include a variety of filament LED configurations while still infringing the Asserted Patents, such as, without limitation, different amounts of light output (known as lumens), different shapes of filaments (*e.g.*, spiral instead of linear), different numbers of filaments, and different lengths of filaments. All such configurations are included in the term "filament LED" as used in this Complaint.

9. The Regents has obtained and analyzed samples of filament LED light bulbs across a variety of sources, including but not limited to the Defendant. All filament LED light bulbs The Regents has analyzed to date infringe at least one claim of the Asserted Patents. Accordingly, The Regents is informed and believes that filament LEDs have been commoditized by mass unlicensed manufacture and that substantially all filament LED light bulbs from unlicensed sources infringe at least one claim of the Asserted Patents.∗

10. The Regents brings this Complaint seeking just compensation for the use of the inventions claimed in the Asserted Patents consistent with The Regents' duty to serve as trustee for the people of the State of California and as steward of the University of California in fulfillment of its educational, research, and public service missions in the best interests of the people of the State of California.

## BACKGROUND OF FILAMENT LED LIGHT BULBS

11. The invention of the incandescent light bulb more than a century ago so profoundly changed the world that the light bulb became the very icon of invention. Reflecting Thomas Edison's enduring fame for inventing the light bulb, many products on the market today that infringe the Asserted Patents are called "Edison" or "vintage" LED light bulbs because they resemble Edison's iconic light bulbs with glowing filaments visible inside glass bulbs.

---

∗Asterisks indicate allegations made upon information and belief.

12. The patented filament LED technology invented at UC Santa Barbara enables light bulbs that replace traditional incandescent light bulbs and, in contrast, use a tiny fraction of the energy, don't get hot, break less easily, and last up to ten or twenty years. Further, unlike compact fluorescent light bulb substitutes for incandescent light bulbs, the patented filament LED technology does not contain the toxic material mercury.*

13. Over the life of a filament LED light bulb, the inventions of the Asserted Patents yield savings in energy and replacement costs, relative to comparable incandescent light bulbs, that far exceed the cost of the filament LED light bulb itself. For example, the web page of Defendant's "GE Vintage 60W Replacement LED Light Bulbs Amber Edison Style ST19 Medium Base"[1] touts $89 in lifetime energy savings and versus a 60-watt incandescent light bulb and a lifetime over 13 years.



---

[1] *See*: https://www.gelighting.com/led-bulbs/e26/ge-led-vintage-60w-replacement-st19-1 (visited on December 20, 2019).

14. Moreover, compared with other LED light bulb designs, filament LED light bulbs cost less to manufacture and are more energy efficient and aesthetically pleasing due to the advantages conferred by the inventions of the Asserted Patents.*

15. The United States retail market has demonstrated tremendous customer demand for the aesthetic, economic, and environmental benefits conferred by the inventions of the Asserted Patents: while filament LED light bulbs only became widely available in the United States in about 2014 or 2015, sales of filament LED light bulbs are expected to exceed $1,000,000,000 in the United States in 2019.*

16. Unfortunately, the filament LED light bulb industry, including Defendant, has stolen The Regents' patented technology with utter disregard for The Regents' patent rights. Substantially all of the infringing filament LED light bulbs The Regents has found on the retail market in the United States reflect China as the country of origin.

17. As a major corporation in the United States, the Defendant has the means and responsibility to ensure the compliance of its supply chain with applicable laws. However, the Defendant has not upheld that responsibility with respect to filament LED light bulbs and instead has provided an illegal outlet for infringing products from unlicensed foreign sources, depriving The Regents of compensation to which it is lawfully entitled for the use of the inventions claimed in the Asserted Patents.

## PARTIES

18. The Regents is a California constitutional corporation with a principal place of business in Oakland, California, and is the owner of all substantial rights in the Asserted Patents. The Regents is charged with the duty of administering the University of California as a public trust, pursuant to Article IX Section 9 of the California Constitution. UC Santa Barbara is an internationally recognized

1 pioneering research institution located in the Central District of California and is one of the ten campuses that make up the University of California System. All University of California actions are done in The Regents' name, including owning property such as patents and other intellectual property and entering into contracts.

19. The Defendant is a New York corporation with corporate headquarters in Boston, Massachusetts, and with numerous businesses and physical facilities located in the Central District of California. The Defendant is registered to do business in California and has appointed as its registered agent for service of process CT Corporation System at 818 Seventh Street, Suite 930, Los Angeles, California 90017.

## JURISDICTION AND VENUE

20. As alleged in Paragraph 1 pursuant to Central District of California L.R. 8-1, this Court has original and exclusive subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

21. This Court has personal jurisdiction over Defendant because its contacts with the Central District of California are significant and pervasive and directly give rise to part of this dispute. The Defendant has numerous regular and established businesses and places of business located throughout the Central District of California.

22. Venue is proper in the Central District of California under 28 U.S.C. § 1400(b) because the Defendant has engaged in infringement of the Asserted Patents, and has numerous regular and established places of business throughout the Central District of California.

## UC SANTA BARBARA'S WORLD CLASS LED RESEARCH

23. UC Santa Barbara proudly counts among its current and late faculty six Nobel Laureates, one Fields Medal recipient, twenty-nine members of the National Academy of Sciences, twenty-seven members of the National Academy of Engineering, and thirty-one members of the Academy of Arts and Sciences.

1  UC Santa Barbara receives over $180,000,000 per year to support its research
2  efforts from both public and private sources.

3      24.    UC Santa Barbara also is the home of a world-renowned Materials
4  Department that is dedicated to solving tomorrow's problems in electronic and
5  photonic materials, inorganic materials, macromolecular and biomolecular
6  materials, and structural materials. UC Santa Barbara's Materials Department has
7  consistently ranked in the top two in the nation in various studies, including by the
8  National Research Council and U.S. News & World Report. In addition, according
9  to Thomson Reuters, Materials research at UC Santa Barbara ranks second in the
10 world in terms of citation impact—a method for comparing the quality of research.
11 The citing of a scholar's research (as represented by a published scientific paper) in
12 another researcher's published work is viewed as a strong indication of the
13 importance of the original work and the influence it might have.

14     25.    UC Santa Barbara's Materials Department has nine separate affiliated
15 research centers, including the California NanoSystems Institute, the Center for
16 Multifunctional Materials and Structures, the Center for Stem Cell Biology and
17 Engineering, the Dow Materials Institute, the Institute for Collaborative
18 Biotechnologies, the Institute for Energy Efficiency, the Materials Research
19 Laboratory, the Mitsubishi Chemical Center for Advanced Materials, and the Solid
20 State Lighting and Energy Electronics Center ("SSLEEC").

21     26.    SSLEEC is the home of nearly two decades of visionary research into
22 solid state lighting and power switching. Recognizing the need for energy-efficient
23 lighting technologies, The Regents, along with industry partners, has funded
24 groundbreaking research at SSLEEC and its predecessor entities that have led to
25 more energy-efficient solutions for lighting, cell phones, computers, appliances,
26 automobiles, industrial equipment, and power distribution systems. SSLEEC
27 research helps solve some of the world's most critical problems by meaningfully
28

**COMPLAINT**

reducing energy consumption and waste associated with light bulbs and other necessities of daily life.

27. SSLEEC consists of approximately a dozen faculty members, thirty graduate students, and twenty staff, including internationally recognized researchers and visiting scholars. The faculty and staff of SSLEEC and its predecessors have published thousands of peer-reviewed publications and have amassed a portfolio of over 250 issued patents. Since its inception, SSLEEC has conferred approximately 100 Ph.D. degrees.

28. Professor Shuji Nakamura is a tenured professor at UC Santa Barbara, a co-Director of SSLEEC, and an inventor of each of the Asserted Patents. In 2014, Professor Nakamura was honored as the co-recipient of the Nobel Prize in Physics. He began researching high-efficiency blue LEDs (which are necessary to create white light with LEDs) in the late 1980's, and his former employer began selling white LEDs enabled by his invention in the mid-1990's. In addition to the 2014 Nobel Prize in Physics, Professor Nakamura has received numerous other awards for his work in the field of LED lighting, including the Nishina Memorial Award (1996), the Materials Research Society Medal Award (1997), the Institute of Electrical and Electronics Engineers Jack A. Morton Award (1998), the British Rank Prize (1998), the Benjamin Franklin Medal Award (2002), the Millennium Technology Prize (2006), the Czochralski Award (2007), the Prince of Asturias Award for Technical Scientific Research (2008), The Harvey Award (2009), and the Technology & Engineering Emmy Award (2012) awarded by The National Academy of Television Arts & Sciences (NATAS). He was elected as a fellow of the U.S. National Academy of Engineering in 2003. He received the 2014 Order of Culture Award in Japan and was inducted into the National Inventors Hall of Fame in 2015. That same year, Professor Nakamura received the Charles Stark Draper Prize for Engineering and the Global Energy Prize in Russia. In July 2016, he was elected to Academia Sinica, Taiwan's preeminent research institution. Professor

Nakamura has been a professor at UC Santa Barbara since 2000 and is an inventor of more than 200 United States patents in addition to over 175 Japanese patents. He has published over 550 papers in his field.

29. Professor Steven DenBaars is a tenured professor at UC Santa Barbara, a co-Director of SSLEEC, and an inventor of each of the Asserted Patents. Professor DenBaars is The Mitsubishi Chemical Professor in Solid State Lighting & Display at UC Santa Barbara. Prior to UC Santa Barbara, he was an engineer at Hewlett-Packard Optoelectronics, where he contributed to the growth and fabrication of visible LEDs, focusing specifically on high brightness red LEDs. He joined UC Santa Barbara in 1991 and helped pioneer the field of solid-state lighting, including the first United States university demonstration of a Blue Gallium Nitride laser diode. Professor DenBaars is the recipient of the National Scientist Foundation Young Investigator Award (1994), the Institute of Electrical and Electronics Engineering Fellow Award (2005) and the IEEE Aron Kressel Award (2010). Professor DenBaars is a fellow of the National Academy of Engineering (NAE) and the National Academy of Inventors (NAI). He has published over 800 papers and is an inventor of over 175 patents.

30. Professor James Speck co-founded SSLEEC with Professors Shuji Nakamura and Steven DenBaars and is an inventor of one of the Asserted Patents. Professor Speck has been a member of the UC Santa Barbara faculty since 1990. He holds the Seoul Semiconductor Chair in Solid State Lighting at UC Santa Barbara. Professor Speck is a member of the Materials Research Society, the American Physical Society, and the Microscopy Society of America. Professor Speck received the Quantum Device Award from the International Symposium on Compound Semiconductors in 2007, was named an inaugural Materials Research Society Fellow in 2008, and received the Japanese Journal of Applied Physics Best Paper Award in 2008. In 2009, he became an American Physical Society Fellow. In 2010, he received the IEEE Photonics Society Aron Kressel Award for his work on

**COMPLAINT**

nonpolar and semipolar Gallium Nitride-based materials and devices. Professor Speck has authored over 600 papers and is an inventor of over 100 patents.

31. Research at SSLEEC and its predecessor entities has resulted in major technological breakthroughs in the field of solid state lighting. This research has also led to numerous successful startup companies that have created hundreds of jobs.

32. For example, in 2007, researchers at SSLEEC's predecessor fabricated a gallium nitride-based LED with the highest efficiency and output power ever reported at the time. They achieved this feat by developing an LED based on non-polar gallium nitride, which has a crystal structure arranged in the m-plane, rather than the conventional c-plane gallium nitride LEDs known at the time. These non-polar gallium nitride LEDs were more efficient and able to handle higher currents than anything available at the time.

33. As another example, in 2012, researchers at SSLEEC's predecessor achieved the world's first violet non-polar vertical-cavity surface-emitting laser ("VCSEL"), which was based on m-plane gallium nitride semiconductors. These VCSELs were able to operate at room temperature and provide high optical gain, which increases optical efficiency. This breakthrough also could result in greatly reduced manufacturing costs, to be used in a variety of applications including lighting, displays, sensors, and any technology that requires energy efficiency and a small form-factor.

34. Additionally, in 2013, SSLEEC researchers, including Professor DenBaars, developed guidelines to make it possible to optimize phosphors—a key component in white LED lighting—allowing for brighter, more efficient lights. This breakthrough put high-efficiency, high-brightness, solid-state lighting on a fast track.

35. The filament LED technology covered by the Asserted Patents is another example of the results of SSLEEC's groundbreaking research. The Asserted

Patents cover some of the important innovations of Professors Nakamura, DenBaars, and Speck, including those that use transparent LED structures and packaging to enable filament LED light bulbs.

## ASSERTED PATENTS

36. On August 24, 2010, the United States Patent and Trademark Office duly and properly issued the '789 patent, which is entitled "Transparent Mirrorless Light Emitting Diode". The Regents owns by assignment all rights, title, and interest in the '789 patent. A true and correct copy of the '789 patent is attached as Exhibit A to this Complaint.

37. On January 19, 2016, the United States Patent and Trademark Office duly and properly issued the '529 patent, which is entitled "Textured Phosphor Conversion Layer Light Emitting Diode". The Regents owns by assignment all rights, title, and interest in the '529 patent. A true and correct copy of the '529 patent is attached as Exhibit B to this Complaint.

38. On January 2, 2018, the United States Patent and Trademark Office duly and properly issued the '464 patent, which is entitled "Light Emitting Diode With Light Extracted From Front And Back Sides Of A Lead Frame". The Regents owns by assignment all rights, title, and interest in the '464 patent. A true and correct copy of the '464 patent is attached as Exhibit C to this Complaint.

39. On February 26, 2019, the United States Patent and Trademark Office duly and properly issued the '916 patent, which is entitled "Transparent Light Emitting Diodes". The Regents owns by assignment all rights, title, and interest in the '916 patent. A true and correct copy of the '916 patent is attached as Exhibit D to this Complaint.

## ACCUSED PRODUCTS

40. Subject to discovery and analysis, the light bulbs in Defendant's "Vintage LED bulbs" product category listed at https://www.gelighting.com/led-bulbs/vintage-light-bulbs (visited on December 20, 2019) and every other product

that includes a filament LED component not more than colorably different from the filament LED components in the light bulbs in the "Vintage LED bulbs" product category (collectively, the "Accused Products"), meets each and every limitation of at least one claim of each of the Asserted Patents, literally or by equivalents.*

41. The Regents needs discovery from the Defendant to identify all of the Accused Products that the Defendant has made, used, offered to sell, sold, or imported into the United States and for which The Regents will seek discovery and relief in this case.

## CLAIM I: INFRINGEMENT OF THE '789 PATENT

42. The Regents repeats and realleges the allegations of the foregoing Paragraphs 1 through 41 as if fully set forth herein.

43. Defendant has infringed at least one claim of the '789 patent under 35 U.S.C. §§ 271(a) and/or 271(g), literally and/or under the doctrine of equivalents, in connection with making, using, offering to sell, selling, and/or importing into the United States the Accused Products.

44. Subject to receiving discovery from Defendant regarding all of the Accused Products it has made, used, offered to sell, sold, or imported into the United States, The Regents will disclose its contentions regarding the claims of the '789 patent that are infringed and the Accused Products for which The Regents seeks relief.

45. Defendant's infringement of the '789 patent has caused and will continue to cause The Regents substantial monetary harm, for which The Regents is entitled to receive compensatory damages in an amount to be determined at trial, but in no event less than a reasonable royalty.

## CLAIM II: INFRINGEMENT OF THE '529 PATENT

46. The Regents repeats and realleges the allegations of the foregoing Paragraphs 1 through 45 as if fully set forth herein.

47. Defendant has infringed at least one claim of the '529 patent under 35

U.S.C. §§ 271(a) and/or 271(g), literally and/or under the doctrine of equivalents, in connection with making, using, offering to sell, selling, and/or importing into the United States the Accused Products.

48. Subject to receiving discovery from Defendant regarding all of the Accused Products it has made, used, offered to sell, sold, or imported into the United States, The Regents will disclose its contentions regarding the claims of the '529 patent that are infringed and the Accused Products for which The Regents seeks relief.

49. Defendant's infringement of the '529 patent has caused and will continue to cause The Regents substantial monetary harm, for which The Regents is entitled to receive compensatory damages in an amount to be determined at trial, but in no event less than a reasonable royalty.

## CLAIM III: INFRINGEMENT OF THE '464 PATENT

50. The Regents repeats and realleges the allegations of the foregoing Paragraphs 1 through 49 as if fully set forth herein.

51. Defendant has infringed at least one claim of the '464 patent under 35 U.S.C. §§ 271(a) and/or 271(g), literally and/or under the doctrine of equivalents, in connection with making, using, offering to sell, selling, and/or importing into the United States the Accused Products.

52. Subject to receiving discovery from Defendant regarding all of the Accused Products it has made, used, offered to sell, sold, or imported into the United States, The Regents will disclose its contentions regarding the claims of the '464 patent that are infringed and the Accused Products for which The Regents seeks relief.

53. Defendant's infringement of the '464 patent has caused and will continue to cause The Regents substantial monetary harm, for which The Regents is entitled to receive compensatory damages in an amount to be determined at trial, but in no event less than a reasonable royalty.

**CLAIM IV: INFRINGEMENT OF THE '916 PATENT**

54. The Regents repeats and realleges the allegations of the foregoing Paragraphs 1 through 53 as if fully set forth herein.

55. Defendant has infringed at least one claim of the '916 patent under 35 U.S.C. §§ 271(a) and/or 271(g), literally and/or under the doctrine of equivalents, in connection with making, using, offering to sell, selling, and/or importing into the United States the Accused Products.

56. Subject to receiving discovery from the Defendant regarding all of the Accused Products it has made, used, offered to sell, sold, or imported into the United States, The Regents will disclose its contentions regarding the claims of the '916 patent that are infringed and the Accused Products for which The Regents seeks relief.

57. Defendant's infringement of the '916 patent has caused and will continue to cause The Regents substantial monetary harm, for which The Regents is entitled to receive compensatory damages in an amount to be determined at trial, but in no event less than a reasonable royalty.

**PRAYER FOR RELIEF**

WHEREFORE, The Regents respectfully requests the Court to enter judgment in favor of The Regents and against Defendant as to all claims asserted herein as follows:

A. Granting a judgment that Defendant has infringed the Asserted Patents in violation of 35 U.S.C. §§ 271(a) and/or 271(g);

B. Ordering Defendant to pay to The Regents damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the patented inventions by Defendant, together with pre-judgment and post-judgment interest and costs as fixed by the Court, in accordance with 35 U.S.C. § 284; and

COMPLAINT

C. Granting The Regents such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38 and Central District of California L.R. 38-1, The Regents demands a trial by jury on all issues so triable.

Dated: December 20, 2019          NIXON PEABODY LLP


By: /s/ Shawn G. Hansen
    Shawn G. Hansen

    Attorneys for Plaintiff
    THE REGENTS OF THE
    UNIVERSITY OF CALIFORNIA